Slip Op. 12 - 146

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MACLEAN-FOGG CO., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br> Defendant-Intervenors. | Before: Donald C. Pogue, <br>         Chief Judge <br><br> Consol.[1] Court No. 11-00209 |

## OPINION

[Commerce's final results on redetermination are AFFIRMED.]

Dated: November 30, 2012

   Thomas M. Keating, Lisa M. Hammond, and Kazumune V. Kano, Hodes Keating & Pilon, of Chicago, IL, for Plaintiffs MacLean-Fogg Co. and Fiskars Brand, Inc.

   Mark B. Lehnardt, Lehnardt & Lehnardt LLC, of Liberty, MO, for Plaintiff-Intervenors Eagle Metal Distributors, Inc. and Ningbo Yili Import & Expert Co., Ltd.

   Craig A. Lewis, T. Clark Weymouth, and Brian S. Janovitz, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Evergreen Solar, Inc.

   Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With her on the briefs were

---

   [1] This action is consolidated with Court Nos. 11-00210, 11-00220, and 11-00221.

Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the briefs was Joanna Theiss, Attorney, Office of the Chief Counsel for the Import Trade Administration, U.S. Department of Commerce, of Washington, DC.

Stephen A. Jones, Christopher T. Cloutier, Daniel L. Schneiderman, Gilbert B. Kaplan, Joshua M. Snead, and Patrick J. Togni, King & Spalding LLP, of Washington, DC, for Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.


**Pogue, Chief Judge:** This case returns to court following remand in MacLean-Fogg Co. v. United States, 36 CIT __, 853 F. Supp. 2d 1336 (2012) ("MacLean-Fogg III"). MacLean-Fogg III found that the Department of Commerce's ("the Department" or "Commerce") application, to the Plaintiffs, of the all-others 374.15% countervailing duty ("CVD") rate required reconsideration or further explanation because Commerce failed to properly explain why the assumption that Plaintiffs, like the mandatory respondents in this investigation,[3] used 100% of

---

[3] When, as in this case, an investigation involves a large number of potential respondents, the governing statute allows Commerce to select a smaller number of respondents to act as mandatory respondents. 19 U.S.C. § 1677f-1(e)(2). The remaining respondents have the option of asking for voluntary respondent status and submitting information for examination. 19 U.S.C. § 1677m(a); 19 C.F.R. § 351.204(d). Companies not selected as mandatory or voluntary respondents receive a rate that is calculated for "all-other" companies. 19 U.S.C. § 1671d(c)(1)(B)(i)(I). To calculate this all-others rate, Commerce is directed by statute to use the weighted average rate of all individually investigated companies, or, in the event that these rates are calculated using adverse facts available ("AFA"), any reasonable method, which may include use of rates calculated using AFA. 19 U.S.C. § 1671d(c)(5)(A)(i)–(ii)

subsidies available throughout the People's Republic of China ("PRC" or "China") was remedial and not punitive. The court ordered Commerce to either explain how its assumption was remedial and not punitive, or, alternatively, recalculate the rate applicable to the Plaintiffs' merchandise.

On remand, Commerce recalculated the all-others rate, finding appropriate a rate equal to the mandatory respondents' preliminary rate: 137.65%. <u>Final Results of Redetermination Pursuant to Court Remand</u>, ECF No. 80 at 1 (Dep't Commerce Sept. 13, 2012) ("Remand Results") (citing <u>Aluminum Extrusions from the People's Republic of China</u>, 75 Fed. Reg. 54,302 (Dep't Commerce Sep. 7, 2010) (preliminary affirmative countervailing duty determination)). Explaining that this rate is remedial and not punitive, Commerce stated that the preliminary rate is not based on all the subsidy programs that were identified in the investigation and ultimately used in the final rate calculation for the mandatory respondents. Rather, Commerce excluded programs that were identified as used solely by the voluntary respondents and assumed a lower subsidy rate for those programs

---

("Section 1671d"); <u>MacLean-Fogg Co. v. United States</u>, 36 CIT __, 836 F. Supp. 2d 1367, 1374 n.9 (2012) ("<u>MacLean-Fogg I</u>"). In addition, Commerce promulgated -- and this court has upheld -- 19 C.F.R. § 351.204(d)(3), which states that for the purposes of calculating the all-others rate, voluntary respondents' rates will not be considered. <u>MacLean-Fogg I</u>, 836 F. Supp. 2d at 1374 (noting Commerce's concerns that voluntary respondents are a self-selecting group more likely to have a lower CVD rate, the inclusion of which could skew the all-others rate).

than the subsidy rate used in the final rate calculation. Remand Results at 22. Plaintiffs seek review of the reduced rate. The court affirms Commerce's rate because Commerce adequately explained why the 137.65% rate is not punitive but is a reasonable calculation for the all-others companies.

We have jurisdiction pursuant to Section 516A(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(2)(B)(i) (2006) and 28 U.S.C. § 1581(c).[4]

### BACKGROUND[5]

Commerce designated the three largest exporters of extruded aluminum from China as mandatory respondents in this investigation. MacLean-Fogg I, 836 F. Supp. 2d at 1370. When the mandatory respondents failed to cooperate, Commerce resorted to adverse facts available to calculate their CVD rate, with a resulting rate of 374.15%. Id. at 1370-71; 19 U.S.C. § 1677f-1(e)(2). Two companies asked for and received voluntary respondent status. After its investigation of these respondents, Commerce calculated final voluntary respondent CVD

---

[4] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[5] The court has, on two previous occasions, remanded this case to Commerce to explain how the calculation of the all-others rate for non-mandatory respondents is reasonable. Familiarity with the court's prior decisions is presumed.

rates which ranged from 8%-10%. Finally, pursuant to the controlling statute and regulations, Commerce averaged the rates calculated for the mandatory respondents and arrived at a rate of 374.15% for the remaining companies, otherwise known as the all-others companies. MacLean-Fogg I, 836 F. Supp. 2d at 1371; see 19 C.F.R. § 351.204(d)(3).

Plaintiffs sought review, claiming that the statutory language in Section 1671d unambiguously called for the all-others rate to be calculated using only individually investigated respondents, which in this case, Plaintiffs claimed, were the voluntary respondents because those were the only respondents who cooperated with Commerce's investigation. MacLean-Fogg I held that Section 1671d was ambiguous with regard to the permitted data source and that Commerce was permitted to use the AFA rate in calculating the all-others rate, provided it did so in a reasonable manner. MacLean-Fogg I, 836 F. Supp. 2d at 1373–74. Nonetheless, the court remanded the all-others rate to Commerce for reconsideration because Commerce had failed to articulate a logical connection between the AFA mandatory respondent rate and the all-others companies. Id. at 1376.

A subsequent opinion concluded that Commerce's preliminary all-others rate in the preliminary determination was also subject to review under the same reasonableness standard because it had legal effect on the entries made during the

interim time period between the issuance of the preliminary and final CVD rates, both as a cash deposit rate and, if an annual review was sought, as a cap on the final rate for those particular entries. MacLean-Fogg Co. v. United States, 36 CIT __, 853 F. Supp. 2d 1253, 1256 (2012) ("MacLean-Fogg II"). Thus MacLean-Fogg II required consideration of the lawfulness of the preliminary rate once Commerce provided a reasonable final CVD rate. Id.

Commerce then provided its first set of remand results. See MacLean-Fogg III, 853 F. Supp. 2d at 1338. In these results, Commerce did not recalculate the all-others rate, but rather, provided data showing that the rate calculated for the mandatory respondents is logically connected to the all-others companies because the mandatory respondents comprise a significant portion of the Chinese extruded aluminum producers and exporters and thus are representative of the Chinese extruded aluminum industry as a whole. In contrast, the all-others companies and voluntary respondents make up a fraction of the market. Therefore, and the court agreed, it was reasonable to use the mandatory respondents' rate in Commerce's calculation because the mandatory respondents were more representative of business practices in the Chinese extruded aluminum market. Id. at 1341. MacLean-Fogg III concluded that Commerce had provided sufficient reasoning for excluding voluntary respondents' rates

from the all-others rate calculation.  Nonetheless, MacLean-Fogg III also concluded that Commerce failed to explain how the all-others rate was remedial and not punitive when it assumed use of all subsidy programs across the PRC while at the same time stating that the all-others companies were significantly smaller than the mandatory respondents. Id. at 1341–43. Accordingly, the court ordered Commerce to reconsider the all-others rate or further explain its reasoning. Id.

In response to the court's second remand order, Commerce submitted the remand results currently under review. In these remand results, Commerce has chosen to designate the all-others rate as equal to the preliminary rate it calculated for the mandatory respondents: 137.65%.  Commerce reasons that because this rate does not utilize the full measure of subsidy programs used to calculate the final 374.15% rate, and excludes all programs that were used only by the voluntary respondents, it is in keeping with the court's order to calculate a rate that is remedial and not punitive. Additionally, by reverting to the preliminary determination rate, Commerce assumed program-specific subsidy rates of 8.54%, which are approximately 2% lower than the final rate calculated for the mandatory respondents. Defendant's Response to Comments Regarding the Second Remand Redetermination, ECF No. 85 at 27-28 ("Defendant's Reply").

Plaintiffs argue that the all-others rate is still punitive because it includes more subsidy programs than the all-others companies could utilize, and is based on high usage rates of the subsidy programs, rates that are not in keeping with historical trends and voluntarily submitted information. Joint Plaintiffs' Comments on Commerce's Second Remand Redetermination, ECF No. 83 at 2-4 ("Plaintiffs' Comments"). Furthermore, Plaintiffs assert that the reasonableness of the preliminary rate is still under consideration by the court and request an opportunity to further brief their claims once the court has ruled on the Second Remand Determination. Id. at 2 n.2. Plaintiffs argue that the all-others rate should be based on the rates assessed on voluntary respondents and historical data identified from similar or identical programs. Id. at 36-38.

## STANDARD OF REVIEW

When reviewing Commerce's determinations in a countervailing duty investigation, the court determines whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is evidence which, considering the record as a whole, "a reasonable mind might

accept as adequate to support a conclusion." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477, 491 (1951) (citing <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The conclusion Commerce reaches need not be the best or only possible conclusion, merely a reasonable one. <u>See</u> <u>Nat'l Cable & Telecomms. Assn. v. Brand X Internet Servs.</u>, 545 U.S. 967, 980 (2005).

## DISCUSSION

As an initial matter, Plaintiffs assert that Commerce must take into consideration the "limited geographic footprint" of the all-others companies when assuming use of subsidy programs.[6] Plaintiffs' Comments at 13. Of the subsidy programs that Commerce factored into its CVD rate calculations, some were available only to producers and exporters located in specific geographic areas.[7] <u>See</u> <u>id.</u> at 14–15. Plaintiffs assert that because the record shows none of the all-others companies had a

---

[6] Plaintiffs also raise an argument that has been heard and settled, namely that the all-others rate is unreasonably based on AFA and is not permitted by statute. But the statute expressly permits the use of AFA rates in the calculation of the all-others rate. <u>See</u> <u>MacLean-Fogg I</u>, 836 F. Supp. 2d at 1373–74.

[7] Plaintiffs point out that ten location-specific programs were available only in certain regions and provinces. Relying on the addresses provided by Petitioners before the investigation began, Plaintiffs claim that Commerce unreasonably included subsidy programs from two cities where the all-others companies do not have a presence. Plaintiffs' Comments at 15.

presence in two cities, Liaoyang and Wenzhou, Commerce unreasonably included the subsidy programs from the two localities in its calculations. Furthermore, Plaintiffs contend, when Commerce included every location-specific subsidy program in its calculations, Commerce unreasonably assumed that each all-others company was somehow present in and able to avail itself of subsidy programs across the entire PRC. Id. at 15.

Commerce notes in response that the rate used here is based on an assumed use of 29 subsidy programs, which stands in contrast to the 54 programs identified and used in the final rate calculation for the mandatory respondents. Defendant's Reply at 8–9. Furthermore, the 137.65% rate does not include the location-specific subsidy programs that were clearly identified on the record as being used only by the voluntary respondents. Id. Finally, Commerce explains that the data Plaintiffs rely on to demonstrate that none of the all-others companies are located in Liaoyang and Wenzhou is unsubstantiated, and that it is not reasonable to extrapolate, without investigation, that the addresses on file are the locations of manufacturing facilities, or that there is no cross-ownership or affiliation between the all-others companies. Remand Results at 24–25. In sum, Commerce's position is that it is charged with fine-tuning an all-others rate based on incomplete record evidence. Defendant's Reply at 10–11.

The court agrees with Commerce. The assumptions guiding Commerce's decision to use the preliminary rate are reasonable given the limitations of the administrative record. Plaintiffs' reliance on the addresses provided in the Petition is unavailing because Commerce raises the reasonable concern that these addresses do not accurately convey locations of manufacturing facilities nor does they account for potential cross-ownership.

While Plaintiffs assert that no record evidence exists to support Commerce's claim that some of the all-others companies may be cross-owned, there is similarly no record evidence to establish that they are not cross-owned. Nor is there evidence to support Plaintiffs' assertions that the addresses provided in the Petition are the addresses for manufacturing facilities. Without gathering additional data – which could have been submitted or obtained had the Plaintiffs asked for voluntary respondent status – Commerce's choice is a reasonable one given the uncertainty surrounding the addresses on record. When Commerce reduced the number of subsidy programs used for its CVD rate calculation for the all-others companies, it addressed the issue raised by MacLean-Fogg III that the all-others rate was unreasonably assuming 100% use of all subsidy programs available in the PRC.

Plaintiff's efforts to demonstrate that the current rate is not a perfect fit and to provide alternative rates are not without weight, but Commerce's obligation is only to provide a reasonable rate, not a perfect one. See Nat'l Cable & Telecomms., 545 U.S. at 980.

Next, Plaintiffs contend that Commerce failed to account for historic trends which show non-use of most alleged subsidy programs and attack the program-specific subsidy rates that go into calculating the final all-others rate, asserting that these rates are aberrant and unrepresentative. Plaintiffs propose several different subsidy rates, based on historic use of subsidy programs and weighted averages. While these rates could possibly be reasonable, they are not the only reasonable ones. All that Commerce is required to provide is a reasonable rate, not necessarily the one that this court or another party feels is a better fit. See id.

Here Commerce was faced at the outset with "the difficult task of selecting an all-others rate with limited information before it." MacLean-Fogg I, 836 F. Supp. 2d at 1376. Plaintiffs had the opportunity to ask for voluntary respondent status and failed to do so. Plaintiffs' effort to detail possible rates based on historic trends and geographic location is the type of effort and cooperation that the court would hope parties would provide when they are individually

investigated, whether as mandatory or voluntary respondents. Furthermore, the court notes that Plaintiffs have the opportunity to ask for voluntary status in an annual review of their CVD rate. 19 C.F.R. § 351.221.

Finally, MacLean-Fogg II also concluded that the lawfulness of the preliminary rate, which was based on the same methodology that was remanded in MacLean-Fogg I, would be reviewed following determination of a final rate. However, in the interim, Commerce provided additional explanation, in its subsequent remand results, showing that the preliminary methodology was reasonable because the mandatory respondents in this investigation comprise the vast majority of extruded aluminum producers and exporters in China, whereas the all-others companies represent a small fraction of the industry. See MacLean-Fogg III, 853 F. Supp. 2d at 1339. Therefore, and for the same reasons provided for the final rate in MacLean-Fogg III, the methodology used to calculate the preliminary rate for the mandatory respondents, and ultimately to calculate the all-others rate as it has now been revised, is sustained.

Consol. Court No. 11-00209                                              Page 14

## CONCLUSION

For the reasons stated above, Commerce's final results upon redetermination are AFFIRMED. Judgment will be entered accordingly.

                                         /s/ Donald C. Pogue
                                         Donald C. Pogue, Chief Judge

Dated: November 30, 2012
       New York, NY

Slip Op. 12 - 146

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MACLEAN-FOGG CO., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br> Defendant-Intervenors. | Before: Donald C. Pogue, <br> Chief Judge <br><br> Consol.[1] Court No. 11-00209 |

JUDGMENT

Whereas the United States Department of Commerce has filed its Final Results of Redetermination Pursuant to Court Remand, ECF No. 80, which was issued pursuant to the court's July 30, 2012, opinion and order, Slip Op. 12-99, ECF No. 76; and Plaintiffs have filed their response thereto, ECF No. 83, and the court having reviewed all pleadings and papers on file herein; and good cause appearing therefor, it is hereby

ORDERED, ADJUDGED and DECREED that <u>Aluminum Extrusions from the People's Republic of China</u>, 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirmative countervailing duty

---

[1] This action was consolidated with Court Nos. 11-00210, 11-00220, and 11-00221.

Consol. Court No. 11-00209                                                  Page 2

determination), as modified by the Final Results of

Redetermination Pursuant to Court Remand, ECF No. 80, is

AFFIRMED.

                                                                            /s/ Donald C. Pogue
                                                                Donald C. Pogue, Chief Judge

Dated: November 30, 2012
      New York, New York